## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **BUDDY RAY MITCHELL,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-13-310-R** |
| | ) | |
| **TRACY McCOLLUM, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## REPORT AND RECOMMENDATION

Petitioner Buddy Ray Mitchell, a state prisoner appearing pro se, challenges the constitutionality of his state-court criminal conviction through a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus (Doc. No. 1) and supporting documents (Doc. Nos. 1-1, 1-2, 1-3). Respondent Warden Tracy McCollum filed a Response (Doc. No. 13), to which Petitioner replied (Doc. No. 16). United States District Judge David L. Russell has referred this action to the undersigned Magistrate Judge for initial proceedings in accordance with 28 U.S.C. § 636. As detailed below, the undersigned recommends that the Petition be denied.

### RELEVANT CASE HISTORY AND ISSUES PRESENTED

On the evening of April 29, 2005, the Carter County, Oklahoma, Sheriff's Office received a report of a single-vehicle accident on Highway 76 in Garvin County, Oklahoma. Vol. II Trial Tr. 258-59 (*State v. Mitchell*, Nos. CF-2005-195, CF-2005-196 (Garvin Cnty. Dist. Ct. Apr. 7-11, 2008)) (Doc. No. 15) (conventionally filed). When emergency responders arrived at the scene of the accident, the driver of the vehicle was

deceased. *Id.* at 293. The Oklahoma Highway Patrol's investigation of the accident indicated that another vehicle had struck the deceased's truck, causing it to leave the roadway and roll several times. *Id.* at 328, 332-33, 346. During the accident investigation, a woman approached the scene and provided investigators with information about the possible second vehicle and its driver. *Id.* at 336-39. Based upon this information, a Garvin County Sheriff's Deputy located Petitioner and ultimately arrested him for driving under the influence ("DUI"). Vol. III Trial Tr. 704-05; Vol. IV Trial Tr. 723.

Petitioner was charged, tried, and convicted in the District Court of Garvin County on separate counts of First-Degree Manslaughter (Case No. CF-2005-195) and Failure to Stop at the Scene of an Accident Involving Death (Case No. CF-2005-196). Original Record ("OR") at 1, 19, 21-22, 24, 33, 34-35 (Doc. No. 15). He was sentenced to 23 years' imprisonment on the manslaughter offense, and ten years' imprisonment and a $10,000 fine on the leaving-the-scene offense, with the sentences to run concurrently. OR at 19, 21-22, 33, 34-35; OCCA Postconviction Order (*Mitchell v. State*, No. PC-2012-508 (Okla. Crim. App. Mar. 12, 2013)) (Doc. No. 13-8) at 1.[1] At both the trial and the sentencing hearing, Petitioner was represented by a privately retained attorney. *See* Pet. (Doc. No. 1) at 12; Pet'r's Appl. Postconviction Relief (Doc. No. 13-5) at 2.

---

[1] Citations to documents filed electronically with this Court use the page numbers assigned by the Court's electronic filing system. The dockets for Petitioner's state-court cases are publicly available through http://www.oscn.net.

Through different counsel, Petitioner filed a direct appeal with the Oklahoma Court of Criminal Appeals ("OCCA"). *See* Appellant's Br. (*Mitchell v. State*, No. F-2008-805 (Okla. Crim. App. filed May 11, 2009)) (Doc. No. 13-1); Pet. at 12; Pet'r's Appl. Postconviction Relief at 2. On November 12, 2009, the OCCA affirmed Petitioner's convictions and sentences. OCCA Summ. Op. (Doc. 13-4) at 6.

Petitioner next filed, pro se, an Application for Postconviction Relief in the Garvin County District Court. *See* Pet'r's Appl. Postconviction Relief at 1-6. The Application was denied. Garvin Cnty. Dist. Ct. Postconviction Order (*Mitchell v. State*, Nos. CF-2005-195, CF-2005-196 (Garvin Cnty. Dist. Ct. May 16, 2012)) (Doc. No. 13-6). Petitioner appealed to the OCCA, and that court affirmed the denial of postconviction relief on March 12, 2013. *See* OCCA Postconviction Order at 4.

Petitioner then filed this federal habeas action raising two grounds for relief. In his first ground, Petitioner asserts that his trial counsel was constitutionally ineffective in failing to: (i) request jury instructions regarding the credibility of opinion witnesses, and (ii) "investigate or introduce evidence that the arrest and seizure of [Petitioner's vehicle] was illegal." *See* Pet. at 5-6. In his second ground, Petitioner asserts that his appellate counsel was constitutionally ineffective in failing to raise on appeal, and seek an evidentiary hearing regarding, trial counsel's failure to investigate the illegally obtained evidence. *See* Pet. at 6-7. Respondent concedes that Petitioner's claims are timely and that Petitioner exhausted his state-court remedies with respect to the grounds raised in his Petition. *See* Resp. (Doc. No. 13) at 2.

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) establishes, at § 2254(d) of Title 28 of the United States Code, certain substantive prerequisites for the granting of habeas relief on any claim that was adjudicated on the merits by a state court. *See* 28 U.S.C. § 2254(d). The Tenth Circuit has summarized the standard for review of such claims:

> Under [AEDPA], we must apply a highly deferential standard in § 2254 proceedings, one that demands that state-court decisions be given the benefit of the doubt. If a claim has been "adjudicated on the merits in State court proceedings," we may not grant relief under § 2254 unless the state-court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). The phrase "clearly established Federal law, as determined by the Supreme Court of the United States," *id.* § 2254(d)(1), refers to the holdings, as opposed to the dicta, of the Court's decisions as of the time of the relevant state-court decision.

> Under the "contrary to" clause of § 2254(d)(1), we may grant relief only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts. And under the "unreasonable application" clause, we may grant relief only if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. An unreasonable application of federal law is different from an incorrect application of federal law. Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.

*Dodd v. Trammell*, 753 F.3d 971, 982 (10th Cir. 2013) (alterations, citations, and internal quotation marks omitted). Pursuant to AEDPA, factual findings made by a state trial or

appellate court are presumptively correct and may be rebutted only by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Because Petitioner's claim is based on assertions that he was denied effective assistance of counsel in violation of the Sixth Amendment,[2] the relevant "clearly established Federal law" is the two-part test established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984):

"First, [Petitioner] must show that counsel's performance was deficient." *See id.* at 687. To satisfy this prong, Petitioner must show that his attorney's performance "fell below an objective standard of reasonableness," or, in other words, that counsel's performance was not "within the range of competence demanded of attorneys in criminal cases." *See id.* at 687-88. Counsel's performance "must have been completely unreasonable, not merely wrong." *United States v. Barrett*, 797 F.3d 1207, 1214 (10th Cir. 2015) (internal quotation marks omitted), *petition for cert. filed*, No. 15-8565 (U.S. Mar. 16, 2016). There is a strong presumption that counsel acted reasonably, and counsel's performance will not be deemed deficient if it "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks omitted).

---

[2] Although Petitioner cites the Fifth, Sixth, and Fourteenth Amendments, it is the Sixth Amendment (enforced against the states under the Fourteenth Amendment) that supplies the substantive guarantee of effective assistance of counsel. *See Malloy v. Hogan*, 378 U.S. 1, 10 (1964); *Medicine Blanket v. Brill*, 425 F. App'x 751, 754 (10th Cir. 2011). The Fifth Amendment is inapplicable because that Amendment's "due process clause only protects against due process violations caused by the federal government," and no such violations are alleged here. *Parnisi v. Colo. State Hosp.*, No. 92-138, 1993 WL 118860, at *1 (10th Cir. Apr. 15, 1993); *see* Pet. at 5-7; U.S. Const. amends. V, VI, XIV.

Second, Petitioner must show he was prejudiced by the alleged deficiency in performance, i.e., that *but for* counsel's unprofessional errors there is a reasonable probability that the result of the proceeding would have been different. *See id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695.

"Courts are free to address these two prongs in any order, and failure under either is dispositive." *Barrett*, 797 F.3d at 1214 (internal quotation marks omitted).

ANALYSIS

**A. Ground One: Ineffective Assistance of Trial Counsel**

In Ground One, Petitioner presents two bases for his assertion that his trial counsel was ineffective. Petitioner's first contention is that trial counsel improperly failed to request a jury instruction regarding the consideration of expert witness testimony. *See* Pet. at 5. Petitioner's second contention is that trial counsel failed to adequately challenge the legality of his arrest and the subsequent seizure of his vehicle. *See id.*

**1. *Petitioner's Claim That His Trial Counsel Improperly Failed to Request a Jury Instruction Regarding Evaluation of Expert Opinion Testimony***

Petitioner contends that his trial counsel was ineffective because he failed to request that the jury in Petitioner's criminal trial be instructed on the evaluation of expert opinion testimony. *See* Pet. at 5; Appellant's Br. at 27.

a) Trial Proceedings

At trial, the State presented expert opinion testimony from law enforcement and associated personnel supporting the conclusion that it was Petitioner and his vehicle that

were involved in the accident and the cause of the deceased's death. At no time during

trial proceedings did Petitioner's trial counsel request that Oklahoma Uniform Criminal

Jury Instruction No. 9-42 or similar be given to the jury. That instruction states:

> Testimony has been introduced of certain witnesses who purport to be skilled in their line of endeavor or who possess peculiar knowledge acquired by study, observation, and practice.
>
> You may consider the testimony of these witnesses, and give it such weight and value as you think it should have, but the weight and value to be given their testimony is for you to determine. You are not required to surrender your own judgment to that of any person testifying, based on that person's education, training or experience. You need not give controlling effect to the opinion of such witnesses for their testimony, like that of any other witness, is to be received by you and given such weight and value as you deem it is entitled to receive.

Okla. Unif. Crim. Jury Instr. No. 9-42 (2d ed. 1996 & Supps.).

### b) Petitioner's Claim and the OCCA's Adjudication

In asserting that his trial counsel was ineffective for failing to request that the jury

be instructed on how to weigh and value expert witness testimony, Petitioner argues that

the State

> relied heavily on the opinions of police officers and expert witnesses to convince the jury of its theory regarding the circumstances of [the deceased's] death and [Petitioner's] involvement. The State presented a plethora of expert witnesses, or three fourths of all witnesses presented at trial. The jury could easily have surrendered their judgment to that of the State's expert witnesses. Without an eyewitness or other direct evidence of the case of [the deceased's] accident, the State's circumstantial case depended on the jury's belief in the opinion of its numerous expert witnesses. Counsel's ineffectiveness deprived Petitioner of a substantive and procedural right to which the law entitles him, *Strickland*, 104 S.Ct. 2052. This is a "serious" constitutional error.

Pet'r's Reply (Doc. No. 16) at 2.

Petitioner first raised this claim as Proposition IV of his direct appeal. *See* Appellant's Br. at 26-28 (arguing that his counsel's "failure to request instructions regarding the credibility of opinion witnesses must be considered ineffective assistance of counsel"). As Proposition I of his direct appeal—but not asserted as an independent ground in this habeas Petition—Petitioner also argued that the trial court erred in failing to instruct the jury on considering the testimony of expert opinion witnesses. *See id.* at 13-18. Specifically, Petitioner argued that without such an instruction, "the jurors had no guidance in evaluating opinion evidence and could easily have surrendered their judgment to that of the State's expert witnesses." *Id.* at 13.

All aspects of this claim of error were adjudicated on the merits by the OCCA for purposes of 28 U.S.C. § 2254(d). *See Matthews v. Workman*, 577 F.3d 1175, 1180 (10th Cir. 2009) ("An adjudication on the merits occurs when the state court resolves the case on substantive grounds, rather than procedural grounds." (internal quotation marks omitted)). With respect to the trial court's failure to give Instruction No. 9-42, the OCCA found that "the trial court erred in failing to give the uniform instruction on expert witnesses," and recognized that this omission was a "serious" error. OCCA Summ. Op. at 2-4, 5 n.19. However, applying the "clear beyond a reasonable doubt" harmless-error standard set forth in *Neder v. United States*, the OCCA found that the trial court's error was harmless, explaining:

> The United States Supreme Court has held that, where an essential instruction is omitted, we may ask, "Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?" This Court has held that overwhelming evidence corroborating the testimony at issue will excuse the failure to give instructions on

corroborating evidence for accomplices, and (along with evidence that the defendant's statements were voluntary) will excuse failure to instruct on corroboration of confessions and voluntary statements. These cases suggest that we must do more than review the strength of the State's overall case. We also look at the evidence relevant to the specific constitutional error.

Failure to give a uniform instruction will not warrant relief unless it results in a miscarriage of justice or violates a substantial constitutional or statutory right. The instruction at issue here does not involve a missing element or other factual determination. Jurors were not required to fill in any gaps in evidence or testimony as a result of the missing instruction, as they might be, for example, where a court fails to instruct on an element of the crime. Mitchell's claim depends instead on the possibility that jurors may have given the expert testimony so much more weight than they gave to that of lay witnesses that jurors improperly surrendered their judgment to that of the experts. We have thoroughly examined the evidence from each expert witness. Taking all the evidence together, and bearing in mind the lay testimony and physical evidence which jurors could see and evaluate for themselves, we conclude that it is clear beyond a reasonable doubt that a rational jury would have found Mitchell guilty had they been properly instructed on expert opinion testimony.

*Id.* at 3-4 (footnotes omitted) (citing *Neder*, 527 U.S. 1, 18 (1999), for proposition that failure to instruct on an element of charged crime is subject to harmless-error analysis). Based upon that reasoning, the OCCA concluded, "Although the trial court erred in failing to properly instruct the jury, no relief is required." *Id.* at 4.

With respect to Petitioner's trial counsel's failure to request Instruction No. 9-42, the OCCA rejected Petitioner's ineffective-assistance claim due to his failure to show that he suffered prejudice from counsel's performance. The OCCA applied the two-prong standard set forth in *Strickland*. *See* OCCA Summ. Op. at 5 & n.18 (citing *Strickland*, 466 U.S. at 687). Relying upon its finding that the substantive error on which Petitioner's ineffective-assistance claim was based (i.e., Proposition I, the failure to instruct on expert witness testimony) was harmless and did not require relief, the OCCA

found that Petitioner had not shown prejudice "from counsel's acts or omissions." *Id.* at 5 n.18. Because Petitioner had not shown prejudice, the OCCA did not address whether trial counsel's performance was deficient. *See id.* The OCCA concluded that "counsel was not ineffective for failing to ask for an instruction on expert witness testimony." *Id.* at 5.

### c) Discussion

To be entitled to habeas relief on this claim of ineffective assistance of counsel, Petitioner must demonstrate, pursuant to 28 U.S.C. § 2254(d)(1), that the OCCA's adjudication of the claim was an unreasonable application of or contrary to *Strickland*. *See* 28 U.S.C. § 2254(d)(1). "Surmounting *Strickland*'s high bar is never an easy task." *Harrington v. Richter*, 562 U.S. 86, 105 (internal quotation marks and citation omitted). And "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Id.* (citation and internal quotation marks omitted).

The OCCA based its determination of *Strickland*'s prejudice prong on its corresponding conclusion that the trial court's failure to specifically instruct the jury on the evaluation of expert opinion testimony was harmless error. Because that prejudice determination, and its incorporated analysis, is not contrary to or an unreasonable application of *Strickland*, Petitioner's ineffective assistance of trial counsel claim should be denied. *Cf. Willingham v. Mullin*, 296 F.3d 917, 934 n.6 (10th Cir. 2002) (explaining

that where substantive claims are rejected on the merits "separate consideration of the associated ineffective assistance claims is unnecessary").

While the State presented expert opinion testimony during the trial, even without such testimony the record contains substantial evidence of Petitioner's guilt on both of the crimes as to which he was convicted. Notably, Petitioner does not specify any specific opinion testimony that he believes was unfairly prejudicial to him. Petitioner characterizes the testimony of law enforcement investigators as wholly opinion in nature, but in this he is incorrect: much of that testimony was as to specific, observed facts. The physical evidence and fact testimony included that:

- prior to the time of the automobile accident, Petitioner was seen intoxicated and driving his car, which was undamaged (Vol. I Trial Tr. 70, 72-73, 99, 109, 124-25, 180);

- around the time of the accident, Petitioner was seen driving his car erratically (*Id.* at 96, 98, 123-28, 196-97, 209-11);

- shortly after the time of the accident, Petitioner was seen driving his car with his driver's side window and mirror broken (*Id.* at 77-78, 83-84, 130, 216-20);

- shortly after the time of the accident, Petitioner was seen with broken glass on his clothing and still intoxicated (*Id.* at 103, 130, 159, 185, 216-20);

- broken glass and black plastic shards were found at the crash scene (Vol. II Trial Tr. 332-35, 339-40);

- the plastic shards recovered from the crash scene physically matched the broken mirror housing on Petitioner's vehicle (*Id.* at 357-59; Vol. III Trial Tr. 675-83; State's Ex. 44);[3]

---

[3] In conjunction with some testimony of law enforcement investigators that could be considered opinion in nature, the jury was also presented with physical evidence from which it could make an independent conclusion. Law enforcement investigators testified that the glass found on Petitioner's clothing matched that of Petitioner's broken window (Vol. II Trial Tr. 625, 628-29) and that the plastic shards found at the crash scene matched that of Petitioner's broken mirror housing (*Id.* at 357-59; Vol. III Trial Tr. 675-

- the broken mirror housing on Petitioner's vehicle was observed to have white marks (the color of the deceased's vehicle) on its outer edge (Vol. II Trial Tr. 359);

- a black mark (the color of the mirror housing on Petitioner's vehicle) was observed on the side of the deceased's vehicle and that mark was approximately the same height as the broken mirror housing on Petitioner's vehicle (Vol. III Trial Tr. 546-47, 555-56, 560-64);

- after Petitioner was read his *Miranda* rights, but before he had been informed of or questioned about the accident, he denied any involvement in an accident or that he had hit anything (Vol. II Trial Tr. 355-57); and

- Petitioner's breath alcohol level when he was arrested was tested at 0.17 and 0.16 (Vol. IV Trial Tr. 731, 774).

Further, although the trial court did not give a specific instruction regarding the weighing of expert witness opinion testimony, the court did instruct the jurors that they were "permitted to draw reasonable inferences from the testimony and exhibits" and "may make deductions and reach conclusions which reason and common sense lead you to draw from the fact[s] which you find to have been established by the testimony and evidence in the case." OR at 154 (Jury Instr. No. 8). Additionally, jurors were instructed that it was their "responsibility to determine the credibility of each witness and the weight to be given the testimony of each witness." OR at 166 (Jury Instr. No. 20).

In light of the trial court's instructions on evaluating witness credibility generally, together with the substantial physical evidence and fact testimony linking Petitioner to the charged crimes, the record does not support a conclusion that but for the failure to request that instruction it is "reasonably likely" that the result of the proceeding would

---

83). While the conclusion of a match is opinion, photographs were submitted to the jury showing that the plastic shards found at the crash scene fit together with Petitioner's broken mirror housing (Vol. III Trial Tr. 679-83; State's Ex. 44).

have been different. *Richter,* 562 U.S. at 111-12 ("In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different." (citation and internal quotation marks omitted)). The OCCA's determination—that the failure to specifically instruct on expert opinion testimony was harmless and, correspondingly, not prejudicial within the meaning of *Strickland*—was neither contrary to nor an unreasonable application of clearly established federal law. *See Strickland,* 466 U.S. at 687-95; 28 U.S.C. § 2254(d)(1); OCCA Summ. Op. at 2-4, 5 & n.18; *see also Gardner v. Galetka*, 568 F.3d 862, 884-85 (10th Cir. 2009) (denying habeas relief on ineffective-assistance-of-counsel claim where erroneous jury instruction "could have had no effect on the outcome"); *Hale v. Gibson*, 227 F.3d 1298, 1323-25 (10th Cir. 2000) (holding that state appellate court's denial of relief on ineffective-assistance claim was not unreasonable where the petitioner failed to show "a reasonable probability" that the jury would have returned a different verdict had improper jury instruction not been given).

For the reasons outlined above, habeas relief should be denied as to this aspect of Petitioner's ineffective assistance of trial counsel claim.[4]

---

[4] Although the Petition confines its discussion of the failure to give Instruction No. 9-42 or its equivalent to Petitioner's ineffective assistance of counsel claim, Petitioner states in his Reply:

> Failure to instruct the jury on such an important issue [as expert witness testimony] violates a substantial constitutional right. Specifically, the right

### 2. *Petitioner's Contention That His Trial Counsel Failed to Properly Challenge the Admission of Evidence Resulting from Petitioner's Illegal Arrest*

As Petitioner's second basis for his Ground One claim of ineffective assistance of trial counsel, he asserts that his "trial counsel failed to investigate or introduce evidence that the arrest and seizure of [Petitioner's] property was completely illegal as the police in effect stole [Petitioner's] car from the sanctity of his home." Pet. at 5. Though Petitioner does not fully explain this argument in his Petition, in his application for postconviction relief Petitioner argued that his initial arrest for driving under the influence of alcohol was illegal because he was found driving on his "residential driveway" and a driveway is not within the scope of section 11-902 of title 47 of the Oklahoma Statutes. *See* Pet'r's Br. in Support of Postconviction Appl. at 11-13 (*Mitchell v. State*, Nos. CF-2005-195, CF-2005-196 (Garvin Cnty. Dist. Ct. filed Jan. 18, 2011)); *see also* Pet'r's Postconviction Appeal Br. (Doc. No. 13-7) at 3-7. Petitioner's argument continued that evidence obtained as a result of the illegal arrest—including the results of the breath alcohol test

---

to a fair trial and due process of law. Although the OCCA found "…that a rational jury would have found Mitchell guilty had they been properly instructed on expert opinion testimony" (Page 4 OCCA Summary Opinion), this is clearly a decision based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding; specifically Mitchell's trial.

Pet'r's Reply at 1. This statement does not constitute a properly presented habeas claim. *See* R. 2(c)(1), R. Governing § 2254 Cases in U.S. Dist. Cts. Moreover, applying the *Brecht* standard required for collateral review of the OCCA's rejection of that claim on direct appeal, the claim should be denied because—in light of the evidence and instructions detailed above—any error in failing to specifically instruct on the evaluation of expert opinion testimony would not have had a substantial or injurious effect on the jury's determination that Petitioner was guilty of the charged crimes. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Lockett v. Trammel*, 711 F.3d 1218, 1232 (10th Cir. 2013).

and evidence obtained from Petitioner's vehicle—was not admissible at trial. *See* Pet'r's Br. in Support of Postconviction Appl. at 11-16; Pet'r's Postconviction Appeal Br. at 3-7. In this Court, the Petition only appears to implicate the admissibility of evidence regarding the condition of Petitioner's vehicle and physical items within the vehicle; however, in his Reply Petitioner also references the results of the breath alcohol test given to him upon his arrest. *See* Pet. at 5; Pet'r's Reply at 3-5.

a)  Trial Proceedings

Contrary to Petitioner's suggestion, Petitioner's trial counsel at trial moved to suppress evidence of the breath alcohol test because "the arrest. . . did not occur on Highway 76" and "it was not established as to whether the arrest occurred at a private drive." Vol. IV Trial Tr. at 838. Trial counsel did not similarly move to suppress evidence of or found in Petitioner's vehicle. *Id.* The trial court denied the motion to suppress. *Id.*

b)  Petitioner's Claim and the OCCA's Adjudication

In his direct appeal, Petitioner did not challenge the admission of evidence obtained upon his arrest or the effectiveness of trial counsel in failing to seek the suppression of that evidence. In his application for postconviction relief, Petitioner argued that his appellate counsel was ineffective for failing to challenge trial counsel's failure to "fil[e] pretrial motions to suppress all evidence secured by police as a result of Petitioner's illegal arrest." Pet'r's Appl. Postconviction Relief at 4. Upon the trial court's denial of the application, Petitioner appealed to the OCCA and sought an evidentiary hearing to contest the trial court's finding that "the location of the arrest" was

"a long driveway to multiple residences." *See* Garvin Cnty. Dist. Ct. Postconviction Order at 2; Pet'r's Postconviction Appeal Br. at 3-8. The OCCA broadly construed Petitioner's arguments regarding evidence obtained upon his arrest as challenging both the effectiveness of trial counsel and appellate counsel. *See* OCCA Postconviction Order at 1. As to the effectiveness of trial counsel with respect to such evidence, the OCCA ruled that the claim was procedurally defaulted due to Petitioner's failure to raise it on direct appeal. *See* OCCA Postconviction Order at 2.

    c) Discussion

    Subject to certain exceptions, a federal habeas court "does not address issues that have been defaulted" in state court "on an independent and adequate state procedural ground." *Cannon v. Mullin*, 383 F.3d 1152, 1172 (10th Cir. 2004) (internal quotation marks omitted). "When questions of procedural bar are problematic, however, and the substantive claim can be disposed of readily, a federal court may exercise its discretion to bypass the procedural issues and reject a habeas claim on the merits." *Id.* at 1159. Here, Petitioner's arguments that his trial counsel should have challenged the admissibility of evidence obtained upon an allegedly illegal arrest fail for three plain reasons.

    First, Petitioner's trial counsel *did* move to suppress evidence of the breath alcohol test on the precise basis now asserted by Petitioner: that at the time he was stopped Petitioner was not driving in a location covered by the applicable statute. *See* Vol. IV Trial Tr. at 838 (arguing in support of motion to suppress that arrest had not been shown to have occurred on Highway 76 or a "private drive," thus referencing title 47, section 11-902 of the Oklahoma Statutes). While the motion did not extend to evidence of or

found in Petitioner's vehicle, *id.*, the trial court's rejection of the suppression argument necessarily would have applied to other evidence sought to be excluded on the same basis.

Second, Petitioner's arguments and suggested additional evidence about the nature of the roadway on which he was arrested would not establish that the arrest was illegal much less that evidence obtained thereby should be excluded. During the accident investigation, a member of the public, Kerri Waller, spoke with the officer who arrested Petitioner and identified Petitioner as the person she believed had been involved in the accident. Vol. I Trial Tr. 164; Vol. III Trial Tr. 702-03. She gave a description of Petitioner's vehicle, including the damage she had observed to that vehicle. Vol. I Trial Tr. 164; Vol. III Trial Tr. 702-705. Ms. Waller also told the arresting officer that Petitioner was very intoxicated and offered to show the officer where Petitioner lived. Vol. I Trial Tr. 164-66; Vol. III Trial Tr. 703-04. After following Ms. Waller, the arresting officer encountered Petitioner driving toward him, swerving from side to side on the "road" in question. Vol. III Trial Tr. 704-05. Petitioner's vehicle matched the description of the car Ms. Waller believed was involved in the fatal crash. Vol. I Trial Tr. 164; Vol. III Trial Tr. 702-05. Upon stopping Petitioner, the arresting officer observed damage to the vehicle including a driver's side dent that Ms. Waller had described, broken driver's side window, and broken driver's side mirror. Vol. III Trial Tr. 705-06. The arresting officer approached Petitioner and noticed "an odor of alcohol on or about his person." *Id.* at 706. After identifying Petitioner, the arresting officer asked him to exit his vehicle. *Id.* at 707. The arresting officer observed Petitioner exit

the vehicle slowly, using the steering wheel and door to do so. *Id.* at 708. The arresting officer also observed that Petitioner was unsteady on his feet and used his hands on the side of his car as he walked. *Id.* The arresting officer further observed that Petitioner had blood on his face and small fragments of glass on his person. *Id.* at 709. Additionally, the arresting officer noticed that Petitioner had slurred speech, spoke with a "heavy tongue," and had bloodshot eyes. *Id.* at 709. Petitioner told the arresting officer that he had drunk "half a pint of whiskey and a couple of beers" that evening. Vol. IV Trial Tr. 723.

The information known to the arresting officer at the time he stopped Petitioner was sufficient to create a reasonable suspicion of crimes in connection with the accident on Highway 76, including driving under the influence of alcohol on Highway 76. *See Coulter v. State*, 777 P.2d 1373, 1374 (Okla. Crim. App. 1989) ("Even when there is no probable cause to make an arrest, a police officer may stop an individual if they have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony, then an investigative stop may be made to investigate that suspicion." (alterations and internal quotation marks omitted) (citing *United States v. Hensley*, 469 U.S. 221 (1985)). Once Petitioner was stopped and the arresting officer observed Petitioner's state of intoxication and the damage to Petitioner's vehicle, there unquestionably was probable cause then—if not prior to that point—to arrest Petitioner for driving under the influence on Highway 76. *See* Okla. Stat. tit. 22, § 196(3); *Davis v. State*, 792 P.2d 76, 84 (Okla. Crim. App. 1990) (holding that police can make warrantless arrest based on probable cause (citing

*Beck v. Ohio*, 379 U.S. 89 (1964)). Therefore, while Petitioner takes issue with the trial court's finding in denying postconviction relief that the arrest occurred on "'a long driveway to multiple residences,'" and seeks to present evidence showing that "no one else lived on the driveway or roadway in question but the Petitioner," Pet'r's Postconviction Appeal Br. at 3, 7 (quoting Garvin Cnty. Dist. Ct. Postconviction Order at 2), the stop and arrest were proper independently of whether the road on which the arrest occurred fell within the scope of section 11-902.

Third, because the plain language of section 11-902 encompasses a private road leading to a single residence, presentation of the additional evidence suggested by Petitioner would not change any conclusion that the road in question fell within the scope of the statute. Petitioner has not disagreed with the trial court's description of the road in question as "long" and a "driveway." *See* Garvin Cnty. Dist. Ct. Postconviction Order at 2; *see also* Prelim. Hr'g Tr. 137 (*State v. Mitchell*, Nos. CF-2005-195, CF-2005-196 (Garvin Cnty. Dist. Ct. July 11-12, 2007)) (Doc. No. 15) (arresting officer describing road in question as "about a quarter of a mile" long). Rather, Petitioner asserts that his trial counsel should have marshaled and presented evidence that "no one else lived on the driveway or roadway in question but the Petitioner" and it was "his own private driveway." *See* Pet'r's Postconviction Appeal Br. at 7. Section 11-902, as effective at the time of Petitioner's arrest, provided:

> It is unlawful and punishable as provided in this section for any person to drive, operate, or be in actual physical control of a motor vehicle within this state, whether upon public roads, highways, streets, turnpikes, other public places or upon any *private* road, street, alley or lane which provides access

to *one* or more *single* or multi-family dwellings, who . . . [i]s under the influence of alcohol.

Okla. Stat. tit. 47, § 11-902(A), (A)(2) (emphasis added). This language applies to the road in question, even as described by Petitioner.[5]

For all of these reasons, and even upon de novo review, Petitioner has not established that he was prejudiced within the meaning of *Strickland* by his trial counsel's alleged failure to investigate the legality of Petitioner's arrest and challenge the admissibility of evidence obtained upon that arrest. *See Richter*, 562 U.S. at 111-12 (to establish prejudice under *Strickland*, claimant must show that "it is 'reasonably likely' the result would have been different" if claimant's counsel had taken certain action). Habeas relief should be denied as to this aspect of Petitioner's ineffective assistance of trial counsel claim.

**B. Ground Two: Ineffective Assistance of Appellate Counsel**

### 1. Petitioner's Claim and the OCCA's Adjudication

In Ground Two of his petition, Petitioner alleges that his appellate counsel was ineffective for failing to challenge on direct appeal Petitioner's "trial counsel's failure to introduce or investigate the illegally obtained evidence used against [Petitioner] at trial."

_____

[5] The undersigned has evaluated this habeas claim on the basis presented: a challenge to Petitioner's trial counsel's failure to investigate the circumstances of the road in question and use those facts to establish that Petitioner's arrest was illegal and, therefore, evidence from the arrest must be suppressed. *See* Pet. at 5; Pet'r's Postconviction Appeal Br. at 7-8. To the extent Petitioner challenges the state court's *construction* of section 11-902, that question is one of state law and not a proper subject for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (holding "federal habeas corpus relief does not lie for errors of state law") (internal quotation marks omitted); *Durbin v. Province*, 448 F. App'x 785, 787 (10th Cir. 2011) ("It is not the responsibility of a federal habeas court to cure errors from the state court concerning state law.").

*See* Pet. at 6-7. Again, the Petition appears to address the admissibility of evidence of and in Petitioner's vehicle but Petitioner's Reply also refers to the results of the breath alcohol test. *See id.*; Pet'r's Reply at 3-4. Petitioner also alleges his appellate counsel was ineffective on direct appeal for failing to pursue an evidentiary hearing to obtain evidence outside the trial record that "would clearly prove the illegality of evidence used against [Petitioner] at trial." Pet. at 6-7. As previously noted, Petitioner specifies that it should have been established that "no one else lived on the driveway or roadway in question but the Petitioner" and it was "his own private driveway." Pet'r's Postconviction Appeal Br. at 7.

Petitioner's initial application for postconviction relief asserted a claim of ineffective assistance of appellate counsel, asserting that appellate counsel should have challenged trial counsel's failure to attempt to "suppress all evidence secured by police as a result of Petitioner's illegal arrest." Pet'r's Appl. Postconviction Relief at 4. The state district court rejected this argument, finding:

> [T]he Defendant's argument on the evidence of his arrest fails to support his legal argument that he was illegally arrested. Defendant attempts to compare the location of his arrest, a long driveway to multiple residences, to the same area as his walk, yard or lawn and therefore not in violation of 47 O.S. §11-902. Defendant also ignores 22 O.S. §196.3, which authorizes a law enforcement officer . . . to make a warrantless arrest when a felony has been committed and the officer has reasonable cause to believe the defendant committed the felony.

Garvin Cnty. Dist. Ct. Postconviction Order at 2. The state district court held that Petitioner's claim for ineffective assistance of appellate counsel failed because there was no "merit or reasonableness to Defendant's claims of an illegal arrest." *Id.* at 2.

Petitioner also requested an evidentiary hearing in his initial application for postconviction relief. *See* Pet'r's Br. in Support of Postconviction Appl. at 18; Pet'r's Mot. Evidentiary Hrg. (*Mitchell v. State*, Nos. CF-2005-195, CF-2005-196 (Garvin Cnty. Dist. Ct. filed Jan. 18, 2011)). The state district court concluded that "no genuine material issue of fact exists" and denied Petitioner's request for evidentiary hearing. Garvin Cnty. Dist. Ct. Postconviction Order at 2.

Petitioner then appealed the denial of postconviction relief to the OCCA, raising the same ineffective assistance of counsel claim and request for evidentiary hearing. *See* Pet'r's Postconviction Appeal Br. at 3-8. The OCCA affirmed the denial of postconviction relief, citing *Strickland* and holding that Petitioner had not shown that the district court had erred in finding "no merit or reasonableness to Petitioner's claim of an illegal arrest." OCCA Postconviction Order at 3-4. The OCCA further found that "the record does not support Petitioner's contention that the District Court erred in denying his post-conviction application without an evidentiary hearing," citing the absence of "a genuine issue of material fact." *Id.* (citing Okla. Stat. tit. 22, §§ 1083-1084).

### 2. *Discussion*

Because the OCCA adjudicated Petitioner's ineffective assistance of appellate counsel claim on the merits, habeas relief may be granted only if Petitioner demonstrates that the OCCA's adjudication was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. §

2254(d)(1), (2); *Dodd*, 753 F.3d at 982. As with claims of ineffective assistance of trial counsel, claims of ineffective assistance of appellate counsel are analyzed under *Strickland* and require a petitioner to establish that counsel's failure to raise an issue was both deficient and prejudicial. *Hawkins v. Hannigan*, 185 F.3d 1146, 1152 (10th Cir. 1999).

The OCCA, applying *Strickland*, determined that there was no merit to Petitioner's claim of an illegal arrest, and, therefore, no prejudice from the failure of Petitioner's appellate counsel to challenge the effectiveness of Petitioner's trial counsel in that regard. *See* OCCA Postconviction Order at 3-4. As set forth above, the undersigned has independently analyzed Petitioner's claim of an illegal arrest and determined that he was not prejudiced within the meaning of *Strickland* because, even if the additional evidence and argument Petitioner states should have been presented by his trial counsel were to have been presented, there is no reasonable likelihood of a different result. *See supra* Section A.2. It follows that the OCCA's adjudication of Petitioner's ineffective assistance of appellate counsel (including its denial of an evidentiary hearing)[6] was

---

[6] In his Reply, Petitioner argues that he "is entitled to Habeas Evidentiary Hearing on ineffective assistance of counsel." Pet'r's Reply at 5 (citing 28 U.S.C. § 2254(e)(2)). As detailed in Part A.2, above, the facts Petitioner seeks to establish would not result in a determination that his arrest was illegal or that evidence obtained thereby should have been excluded. Accordingly, any argument regarding an evidentiary hearing before this Court also fails. *See Schriro v. Landrigan*, 550 U.S. 465, 475-76 (2007) ("In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."); *Williams v. Trammell*, 782 F.3d 1184, 1210 (10th Cir. 2015) (stating that a habeas petitioner is not entitled to an evidentiary hearing unless "his allegations, if true and not contravened by the existing factual record, would entitle him to habeas relief" (internal quotation marks omitted)).

neither contrary to nor an unreasonable application of *Strickland*. *See* 28 U.S.C. § 2254(d)(1); *Hawkins*, 185 F.3d at 1152 ("If the omitted issue is meritless, then counsel's failure to raise it does not amount to constitutionally ineffective assistance."); *Miller v. Mullin*, 354 F.3d 1288, 1299 (10th Cir. 2004); *Jackson v. Shanks*, 143 F.3d 1313, 1321 (10th Cir. 1998) ("It is completely reasonable, and in fact advisable, for appellate counsel to eliminate weak but arguable claims and pursue issues on appeal [that] are more likely to succeed."). Habeas relief should be denied on Ground Two.

## RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Petition be denied.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of the right to file an objection to this Report and Recommendation with the Clerk of this Court by June 15, 2016, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the present case.

ENTERED this 25th day of May, 2016.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE